UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 5, 2014
```

-------------------------------------------------------------- x
ALZAL CORP.,

      Plaintiff,

   -against-

CINEMACAR II INC., CINEMACAR LEASING
INC., and GUY CARNAZZA

      Defendants.
-------------------------------------------------------------- x

12 Civ. 8228 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

  Plaintiff Alzal Corporation ("Alzal") brings this action against Defendants Cinemacar II Inc., Cinemacar Leasing Inc. (collectively, "Cinemacar"), and Guy Carnazza ("Carnazza") (collectively, "Defendants"), the principal shareholder in Cinemacar, for breach of contract, unjust enrichment, and conversion. Attached to the complaint is a contract, dated September 12, 2011 (the "Contract"), between Cinemacar and Alzal which provides a New York forum selection clause. Lambros Motitis ("Motitis"), an independent contractor at Cinemacar, signed the Contract purportedly on behalf of Cinemacar. Carnazza was neither a party to nor mentioned in the Contract.

  Defendants move to dismiss for lack of personal jurisdiction or, alternatively, improper venue, claiming that Motitis was not authorized to sign the Contract and that Defendants lack sufficient contacts in New York. As Plaintiff's counsel stated, "there are so many contradictory submissions on both sides, the Court needs to see the overall picture to figure out who is lying and who is telling the truth." *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Br.") at 4. The Court held an evidentiary hearing on March 3, 2014. For the reasons stated on the record at the close of the hearing, Defendants' motion is GRANTED, in

1

part, and DENIED, in part. The Court dismisses the claims against Carnazza, without prejudice, and transfers the case to the District Court of New Jersey for further proceedings.

## BACKGROUND

### I. Facts

In or around April, 2011, Carnazza, Igdalev, and Moscatello discussed entering into a business arrangement for the sale of used cars. Moscatello would locate the used cars; Igdalev, acting on behalf of Alzal, would provide the funding for purchasing the cars; and Carnazza would place the cars for resale on Cinemacar's lot in Westwood, New Jersey. During June or July of 2011, Carnazza hired Motitis, as an independent contractor, to arrange financing for Cinemacar's customers. At various times during the summer, the four men met to discuss the business arrangement at Cinemacar and restaurants in New Jersey. The parties verbally agreed to split the profits equally, or 25% for each party. Igdalev and Motitis worked out of the second floor of Cinemacar's office. When a car was purchased, Igdalev generally gave the title to Cinemacar in exchange for Alzal's portion of the sale.

On September 12, 2011, Igdalev and Motitis signed a contract that purported to bind Alzal and Cinemacar. The Contract provides for the following:

> Cinemacar will pay Alzal 25% of their profit (the difference between Alzal's purchase price of the vehicle and the amount paid by the customer/purchaser plus any sums earned through financing or leasing the vehicle[)] within 30 days from the date that the vehicle is sold. If Cinemacar fails to pay Alzal the amount that is due from a sold vehicle in addition to Alzal's cost for any reason, the amount owed to Azal will be Alzal's cost plus $10,000.00 as liquidated damages.

Pl.'s Hr'g Ex. 2, ¶ 3. The Contract also provides Alzal with 25% profit share of "vehicles for sale that are not owned or provided by Alzal during any period that Cinemacar is also in possession of vehicles owned or provided by Alzal." *Id.* ¶ 6. The Contract further provides that any dispute between Alzal and Cinemacar over the Contract be litigated in New York, *id.* ¶ 9,

and that Cinemacar pay Alzal's costs and attorney's fees if Alzal initiates litigation, *id.* ¶ 10. Igdalev and Motitis signed the Contract in front of a notary public, and the Contract lists Motitis as "Finance Director" at Cinemacar. On or about November 18, 2011, Igdalev was removed from Cinemacar's office and the parties ceased operating under the terms of the agreement.

## II.     Procedural History

On November 13, 2012, Azal filed its complaint against Defendants, alleging that Defendants breached the September 12, 2011 contract. On February 15, 2013, Defendants moved to dismiss for lack of personal jurisdiction or improper venue. After reviewing the submissions, the Court concluded that there was a genuine dispute over personal jurisdiction and directed the parties to engage in discovery relating to jurisdiction and venue issues. *See* Order, ECF No. 23. On July 26, 2013, after discovery was completed, Defendants renewed their motion to dismiss. The question of personal jurisdiction hinged on credibility, and the Court therefore requested an evidentiary hearing. Specifically, the parties were to address the following issues: (1) whether Motitis had authority to sign the Contract on behalf of Cinemacar, and (2) whether any negotiations occurred in New York. On February 25, 2014, the Court entered an order describing the legal standard and disputed issues. *See* Order, ECF No. 49.

On March 3, 2014, the Court held the evidentiary hearing. James A. Moscatello ("Moscatello"), Richard Leibowitz ("Leibowitz"), Motitis, and Ilya Igdalev ("Igdalev") testified on behalf of Plaintiff. At the close of Plaintiff's evidence, Defendants moved for a determination that Plaintiff failed to establish by a preponderance of the evidence that there was personal jurisdiction. Ruling from the bench, the Court held that Motitis lacked the authority to sign the Contract and therefore personal jurisdiction could not be established based on the forum selection clause in the written agreement of September 12, 2011. The Court also held that

Plaintiff failed to establish that Cinemacar or Carnazza had sufficient contacts in New York to subject them to personal jurisdiction. The Court stated its intention to transfer the case to the District of New Jersey, dismiss Carnazza from the case, and enter a short order to that effect.

## DISCUSSION

**I.      Legal Standard**

A court may decide a motion to dismiss for lack of personal jurisdiction "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). When a court decides to hold an evidentiary hearing, the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). Similarly, a plaintiff must prove the existence of venue by a preponderance of the evidence. *See Sanderson v. Horse Cave Theatre* 76, 881 F. Supp. 2d 493, 506 (S.D.N.Y. 2012).

**II.     The Court Lacks Personal Jurisdiction Over Defendants**

    **A.     Defendants Did Not Consent to Personal Jurisdiction Through the Forum Selection Clause**

Plaintiff asserts personal jurisdiction over Cinemacar on the basis of the forum selection clause in the September 12, 2011 contract.[1] "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., v. Gottdiener,* 462 F.3d 95, 103 (2d Cir. 2006). The Court must first consider whether Motitis acted within the scope of his authority when he signed the Contract on behalf of Cinemacar. As a preliminary matter, Motitis was not a Cinemacar officer, director, or employee; rather, he was an independent

---

[1] Alzal appears to also assert personal jurisdiction over Carnazza on the basis of the forum selection clause. *See* Pl.'s Br. at 3-13. But the Contract binds only Alzal and Cinemacar, and does not mention Carnazza at all. As a result, Alzal cannot establish personal jurisdiction over Carnazza on this basis.

4

contractor that arranged automobile financing for Cinemacar's customers. As a result, Motitis's position alone did not grant him authority to bind Cinemacar. Instead, Alzal claims that Carnazza explicitly authorized Motitis to sign the Contract on behalf of Cinemacar. *See* Pl.'s Br. at 4-8.

The sole evidence of actual authority, however, is the testimony of Igdalev and Motitis.[2] Neither is credible. At multiple points during their testimony, Igdalev and Motitis contradicted their deposition answers regarding critical issues surrounding the contract's formation. At other times, they supplemented their prior statements with new—and more detailed—versions of the events to bolster Plaintiff's claims. For example, Igdalev testified for the first time that he met with Carnazza in Long Island in connection with the Contract, despite not mentioning this meeting in his two prior affidavits, two opposition briefs, or deposition testimony. While disgorging previously untold facts, Igdalev and Motitis could not remember basic details regarding when or how any alleged authority was given to Motitis. For instance, Motitis drew repeated blanks when he was asked the time, place, and details of the conversation in which Carnazza authorized him to sign the Contract. Most damaging to Plaintiff's case is Igdalev's past criminal conviction in the Superior Court of New Jersey, which the Court may consider pursuant to Federal Rule of Evidence 608. Igdalev was convicted upon a guilty plea based on similar conduct alleged by Defendants here: "utter[ing] as true to the New Jersey Motor Vehicle Commission a writing, namely an authorization letter, so that it purported to be notarized by Larry Elorin, who did not authorize said act or is a factitious person."[3] *See* Def.'s Hr'g Ex. I. During cross-examination, Igdalev claimed that he could not recall reading this portion of the

---

[2] Although Moscatello and Leibowitz testified that they saw the Contract at Cinemacar's office, this has no bearing on whether Motitis was actually authorized to sign on behalf of Cinemacar.

[3] The Court now understands why Alzal chose New York as the forum: Igdalev did not want a New Jersey court to be influenced by his New Jersey criminal conviction. But that conviction is just as damaging to Igdalev's credibility in New York.

Indictment. The Court concludes that he was lying about his previous lies. Accordingly, the Court finds Igdalev's and Motitis's testimony incredible.

Furthermore, Carnazza had no reason to authorize anyone to sign the Contract. While Plaintiff claimed that it was a floor plan financing agreement, all of the terms ran exclusively in Alzal's favor. *See* Pl.'s Hr'g Ex. 2, ¶¶ 3, 6, 9, 10 ($10,000 per car in liquidated damages, 25% of the profits on non-Alzal cars, a desirable choice of forum, and attorneys' costs and fees). Furthermore, terms like a forum selection clause or attorneys' fees provision have nothing do with floor plan financing. In fact, all floor plan terms were already included in the prior oral agreements. The written agreement is also strange in that it allocates only 50% of the profits and ignores the interests of Moscatello and Motitis. These factors demonstrate that Carnazza had no reason to authorize a one-sided contract which had nothing to do with the way in which the four parties were actually doing business.

Plaintiff responds that these new terms were necessary because it bore all of the risk. *See* Pl.'s Br. at 8. But the verbal agreement, coupled with the consignment agreements and the way Alzal held title documents which were not released by Alzal until it had cash in hand, provided Alzal with all the protection it needed. Plaintiff also presented no testimony as to why the consignment agreements—which had been used since July—were inadequate to insulate Alzal. These agreements provided Alzal with full access to the vehicles prior to sale and with title until it was paid in full. *See* Pl.'s Hr'g Ex. 3. Not only were these agreements sufficient to protect Alzal's interests, but they actually did: Motitis testified that Alzal had always been paid in full for any cars sold by Cinemacar. In light of the incredibility of Plaintiff's witnesses and the nature of the Contract, Plaintiff did not meet its burden in demonstrating that Motitis had actual authority to sign on behalf of Cinemacar.

Plaintiff also claims that Motitis had apparent authority to sign the Contract on behalf of Cinemacar. *See* Pl.'s Br. at 5-6. Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him." *Minskoff v. Am. Express Travel Related Servs. Co*., 98 F.3d 703, 708 (2d Cir. 1996). Here, Plaintiff argues that Motitis regularly signed agreements on behalf of Cinemacar and therefore it reasonably believed that Motitis was authorized to sign the Contract. But these agreements related to car financing, not extraordinary contracts like the one at issue. When Motitis did negotiate business on behalf of Cinemacar, it was Carnazza—not Motitis—who ultimately signed the contract. *See* Def.'s Hr'g Ex. M. In fact, not only was it unreasonable to believe that Motitis was authorized to sign the September 12, 2011 contract, it appears that Igdalev *knew* that Motitis lacked authority. This is why he went to great lengths to have the agreement signed without Carnazza's knowledge. As a result, Plaintiff has not established apparent authority by a preponderance of the evidence.[4]

Accordingly, the Court holds that Motitis had neither actual nor apparent authority to bind Cinemacar to the Contract. As a result, the Court holds that the Contract is invalid for jurisdictional purposes and therefore the Court cannot obtain personal jurisdiction over Cinemacar on the basis of the forum selection clause.

**B.    Defendants Do Not Have Sufficient Contacts in New York To Establish Personal Jurisdiction**

Plaintiff also claims that Defendants have sufficient contacts in New York to submit themselves to personal jurisdiction. "[P]ersonal jurisdiction is governed by New York Law,

---

[4] Plaintiff further asserts that the Contract is enforceable under principles of estoppel and ratification. *See* Pl.'s Br. at 10-13. But nothing changed after the Contract was signed: the parties continued operating under the terms of the prior oral agreement and consignment agreements. As a result, the Court rejects both arguments.

7

which provides for personal jurisdiction over out-of-state defendants based on general jurisdiction under N.Y.C.P.L.R. § 301 . . . or long-arm jurisdiction under N.Y.C.P.L.R. § 302 . . . ." *Universal Trading & Inv. Co., v. Tymoshenko*, No. 11 Civ. 7877, 2012 WL 6186471, at *2 (S.D.N.Y. Dec. 12, 2012) (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). Long-arm jurisdiction may be obtained over a defendant if that defendant transacted business in New York and the claim arose out of that business. *See McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981). Alzal alleges long-arm jurisdiction on the basis of contract negotiations that occurred in New York.[5]

Yet Plaintiff failed to establish that negotiations regarding the agreement took place in New York. Although Moscatello, Leibowitz, and Igdalev testified about a business meeting at Leibowitz's office in Bardonia, New York, they could not recall the specifics of the conversation or who was involved. The most that could be said is that Moscatello, Carnazza, and Igdalev went to a New York dealership to buy cars pursuant to their oral agreement and after that they went to Leibowitz's office which was just across the highway from the dealership. According to Moscatello, he did not participate in the conversation at Leibowitz's office. According to Leibowitz, Moscatello expressed his excitement over the joint venture during the meeting. Furthermore, even if these discussions did occur, Plaintiff failed to establish that the meeting was anything more than casual conversation between friends, who also happened to be business associates. As a result, the Court finds that the negotiations regarding the joint venture occurred almost entirely in New Jersey and therefore lacks long-arm jurisdiction over Defendants.

---

[5] In its opposition brief, Alzal also asserted long-arm jurisdiction on the basis of three other New York contacts. In the February 25, 2014 Order, the Court rejected two of those contacts as irrelevant or unsupported. *See* ECF No. 49 at 5-6. Furthermore, the remaining basis for jurisdiction—that Defendants mailed payments and purchase requests to Alzal in New York—was contradicted by Plaintiff's own witnesses at the hearing.

Accordingly, the Court holds that Plaintiff failed to establish by a preponderance of the evidence that Motitis had the authority to sign the Contract or that Cinemacar has sufficient contacts in New York to establish personal jurisdiction.  This is solely a jurisdictional finding. *Cf. Dorchester Fin. Sec., Inc.*, 722 F.3d at 87.  Alzal may still be entitled to relief but not in the Southern District of New York.  Pursuant to 28 U.S.C. § 1406, the Court transfers the case to the District of New Jersey, where a substantial portion of the events occurred.  Plaintiff also failed to provide any evidence that the Court has personal jurisdiction over Carnazza.  Even if valid, the Contract does not provide a basis for asserting personal jurisdiction over Carnazza.  The Contract binds only Alzal and Cinemacar, and does not mention Carnazza at all.  Furthermore, any appearance he may have made in New York in connection with the joint venture is too ephemeral to support an assertion of personal jurisdiction.  As a result, the Court dismisses Carnazza from the case for lack of *in personam* jurisdiction.

### III.    Venue in the Southern District of New York Is Improper

Even if Cinemacar did have sufficient contacts in New York based on the location of the negotiations, the Court would still transfer the case pursuant to 28 U.S.C. § 1404.  "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other to any other district or division where it might have been brought." 28 U.S.C. § 1404.  The purpose of this Section is to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 400-01 (S.D.N.Y. 2005) (internal quotations omitted).  Since substantially all the evidence and witnesses are located in New Jersey, transferring would be in the interest of justice.  Thus, even if Plaintiff

9

established long-arm jurisdiction over Cinemacar, which it has not, the case would still be transferred to the District of New Jersey.

## CONCLUSION

Accordingly, the Court holds that it lacks personal jurisdiction over Defendants and that venue is improper. The Court therefore dismisses the claims against Carnazza without prejudice and transfers the case to the District Court of New Jersey for any further proceedings. Defendants' motion is GRANTED, in part, and DENIED, in part. The Clerk of the Court is directed to terminate Defendant Carnazza from the case and transfer the case to the District of New Jersey.

Dated:  New York, New York
       March 5, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge